OPINION OF THE COURT
John A. Milano, J.
This proceeding seeks to clarify the rights afforded to “eligible senior citizens” by the Martin Act (General Business Law, art 23-A), after a plan of co-operative conversion has been declared effective as an eviction plan. Implicit in this determination is the issue of the statutory interpretation of section 352-eeee (subd 2, pars [a], [b]) of the General Business Law of the State of New York.
Due to the importance of this issue and since it is apparently one of first impression, the Attorney-General has been granted leave to file a brief as amicus curiae in this matter.
ISSUE
The issue presented herein is whether a rent-stabilized senior citizen tenant, who has properly elected to remain at the premises pursuant to section 352-eeee (subd 1, par [e]) of the General Business Law, continues to be afforded rent- *309 stabilized status following the conversion of such tó cooperative ownership. This court holds that both the Martin Act and public policy clearly mandate that electing senior citizens maintain rent-stabilized status and cannot be deprived of their right to renewal leases which conform to the Rent Stabilization Law (Administrative Code of City of New York, ch 51, tit YY) and Code of the Real Estate Industry Stabilization Association of New York City, Inc. (Code).
STATEMENT OF FACTS
On or about November, 1979, an offering plan for the conversion of 88-11 Elmhurst Avenue, Elmhurst, New York City, to co-operative ownership from its then status as a residential rental building was submitted to the Department of Law, pursuant to the “prefiling” review process as provided for in 13 NYCRR 17.3. After review by an attorney in the Bureau of Real Estate Financing, the offering plan was submitted for filing pursuant to section 352-e of the General Business Law. The offering plan was accepted for filing by the Department of Law and was presented to tenants at the said premises on or about July 1, 1980. The plan was an eviction-type plan.
The tenant, Theresa Recht, resided at the premises as a rent-stabilized tenant. In accordance with section 352-eeee (subd 1, par [e]) of the General Business Law and the terms of the plan the said respondent elected to remain at the premises as an “eligible senior citizen”. It is not disputed that the election by the tenant was properly made and accepted by the petitioner.
Subsequent to the expiration of respondent’s lease on October 31,1981, petitioner presented Theresa Recht with a renewal lease. The proposed lease would raise the rent from $234.75 (the base rent under stabilization) to $350 per month for the first year; $400 per month for the second year, and $450 per month for the third year. Petitioner acknowledges that these increases exceed the percentage authorized by rent stabilization, but claims that such is inapplicable after the conversion to co-operative ownership. Thus, petitioner claims that the proposed increases are proper, pursuant to section 352-eeee (subd 2, par [a]) of *310 the General Business Law on the theory of rentals based on comparability. Respondent refused to accept the proposed lease, since it does not conform to the mandates of rent stabilization.
LEGISLATIVE INTENT
In the Martin Act, the Legislature has granted important protections to senior citizens who are tenants of rental buildings undergoing conversions to co-operative ownership, in order to relieve them of the hardship of eviction during the present period of an intense housing shortage in New York City. (General Business Law, § 352-eeee.) Those eligible for such protection are senior citizens 62 years old or older on the date the plan is accepted for filing by the Attorney-General and who have resided in the building as their primary residence for two years prior to such filing and who have a combined income of less than $50,000. In a memorandum filed with Assembly Bill No. 8298, on July 5, 1979, Governor Hugh Carey approved and signed into law chapter 432 of the Laws of 1979, amending the General Business Law and the Administrative Code of the City of New York in relation to the protection of senior citizens in the conversion of residential real estate from rental status to co-operative ownership. The Governor stated, inter alia: “Senior citizens are in a particularly precarious position when faced with a proposed cooperative or condominium plan under which non-purchasing tenants could be evicted. This situation arises by reason of the limited financial resources of many such persons, the physical limitations of many such persons and the long-term attachments that many such persons have to the neighborhoods in which they presently reside. Particularly in New York City where vacancy rates are low, senior citizens are, therefore, subjected to enormous pressures to purchase their apartments. If they are unable to do so for financial or other reasons, they are forced to find new accommodations in an increasingly tight rental market. Many of these senior citizens have fixed incomes which makes their plight that much more difficult. This bill seeks to remedy this situation”. (NY Legis Ann, 1979, pp 266-267.)
*311 THE LAW
Petitioner contends that the co-operative offering plan, once it becomes effective precludes and terminates any further stabilized rental regulation of the tenant’s apartment by the Code and that the term “government regulation” (General Business Law, § 352-eeee, subd 2, pars [a], [b]; emphasis supplied) does not refer to the Code because it was adopted by the Rent Stabilization Association, a private body and therefore not a governmental regulation but a set of guidelines to regulate its own private membership.
The Martin Act specifies and governs the rights of the eligible senior citizen with respect to rent and continued occupancy. (General Business Law, § 352-eeee, subd 2, par [a] , [b].) The determination regarding which of these alternative provisions are applicable hinges upon whether or not the dwelling unit is subject to government regulation. If the unit is subject to government regulation, paragraph (b) of subdivision 2 governs and the unit remains subject to such regulation. If, however, “government regulation * * * is eliminated or becomes inapplicable after" the plan has become effective” paragraph (a) of subdivision 2 governs; in such instance, the only protection afforded to the eligible senior citizen is that the unit “shall not be subject to unconscionable increases beyond ordinary rentals for comparable apartments during the period of their occupancy.”
Pursuant to section YY51-6.0 of the Administrative Code, a Real Estate Industry Stabilization Association was established and the Code of the Real Estate Industry Stabilization Association of New York City, Inc., was promulgated for the regulation of rents and eviction in the City of New York. Although the Real Estate Industry Stabilization Association is a private and nongovernmental entity composed of owners of buildings subject to the Rent Stabilization Law (Local Laws, 1969, No. 16, of City of New York) and the Code, it is clear that premises subject to said laws are in essence government regulated. In 8200 Realty Corp. v Lindsay (27 NY2d 124) the Court of Appeals held that the Rent Stabilization Law of 1969 did not confer an unlawful delegation of legislative power to the Real Estate Industry Stabilization Association; that the 1969 *312 law is administered in part by an association made up of apartment owners but under close and detailed supervision and control of official city agencies, to wit, governmental entities. The court held that such over-all supervision was vested in the Housing and Development Administration (now Department of Housing Preservation and Development) which is expressly authorized to enact rules and regulations for the implementation of the statute (Administrative Code, § YY51-4.0, subd c); to approve the Code of the Real Estate Industry Stabilization Association of New York City, Inc. (Administrative Code, § YY51-6.0, subd b, par [2]) and to discipline an association (Administrative Code, § YY51-6.0, former subd d.)
Having established that dwelling units, such as those at bar, are subject to “government regulation”, the issue remains as to whether such regulation continues after title to a premises has been conveyed to a co-operative corporation pursuant to an eviction plan. There can be no other conclusion but that the transfer of title to a property to the apartment corporation does not eliminate the protections afforded by government regulation. To hold otherwise would circumvent the legislative intent of the Martin Act. Moreover, a contrary result would render meaningless the guarantee that “dwelling units subject to government regulation as to rentals an<jl continued occupancy shall continue to be subject thereto.” (General Business Law, § 352-eeee, subd 2, par [b].)
Petitioner erroneously assumes that section 352-eeee (subd 2, par [a]) of the General Business Law is applicable when the plan has been declared effective. Paragraph (a) of subdivision 2 applies if, and when, “government regulation * * * is eliminated or becomes inapplicable after the plan has become effective”. This provision would apply if, for example, rent stabilization was not renewed by the Legislature. For example, the Rent Stabilization Law of 1969 was extended to April 1, 1985, by Local Law No. 18 of the City of New York, passed on March 24 and signed into law by the Mayor on March 30, 1982. If for any reason, the Rent Stabilization Law had been repealed or not extended after a co-op plan became effective, regulatory rental pro *313 tection for the senior citizen would cease subject to any unexpired leasehold but such is not the case.
The Conciliation and Appeals Board (CAB) of the Real Estate Industry Stabilization Association has adhered to the view that electing senior citizens maintain their rent-stabilized status following a co-operative conversion pursuant to an eviction plan. In Matter of Vermeer Owners (CAB Opn No. 10,090) senior citizens confronted with an eviction plan, elected to remain at the premises as nonpurchasing tenants and properly filed election forms pursuant to section 352-eeee (subd 1, par [e]) of the General Business Law. The CAB rejected the claim that it was divested of jurisdiction once title to the property was transferred to the co-operative corporation pursuant to an eviction plan, holding that “it retains jurisdiction for all purposes under the Rent Stabilization Law but only as to those apartments still subject to the law’s provisions after title has been conveyed to the cooperative corporation”.
In Matter of Hirsch (CAB Opn No. 18,482) the owner refused to offer a renewal lease within rent-stabilized guidelines. The CAB determined that the said senior citizen remained a rent-stabilized tenant and ordered the owner to provide the tenant with a lease which complied with all stabilization guidelines.
CONCLUSION
Accordingly, the owner is directed to offer to the tenant a renewal lease for one, two or three years at the tenant’s option. Said offer shall be made forthwith and said rental provided therein shall be at the lawful guidelines increase and otherwise on the same terms and conditions as provided in the expiring lease, except as otherwise provided in the Code. The said renewal lease shall commence January 1, 1982.
The petition in accordance with and consistent with this decision is hereby dismissed.